IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| SUBRINA POUPAK SEHAT,<br><br>                Plaintiffs,<br><br>    v.<br><br>PROGRESSIVE UNIVERSAL<br>INSURANCE COMPANY OF<br>ILLINOIS; WASHINGTON<br>COUNTY SHERIFF'S OFFICE;<br>RYAN CORBRIDGE,<br><br>                Defendants. | Civ. No. 3:14-cv-01433-PK<br><br>**FINDINGS &**<br>**RECOMMENDATION** |

Papak, Magistrate Judge.

This matter comes before the Court on Motions to Dismiss Plaintiff Subrina Sehat's Third Amended Complaint, ECF No. 184, filed by Defendants Washington County Sheriff's Office, ECF No. 201, Defendant Ryan Corbridge, ECF No. 203, and Defendant Progressive Universal Insurance Company of Illinois, ECF No. 211. Defendants' Motions should be GRANTED and the Third Amended Complaint should be DISMISSED with prejudice.

## BACKGROUND

The following facts are taken from the Third Amended Complaint ("TAC") and the supporting declarations and exhibits:

Plaintiff Subrina Sehat is an Iranian citizen living in the United States as a legal permanent resident. TAC ¶ 7.

In April 2013, Plaintiff purchased an auto insurance policy from Defendant Progressive Universal Insurance Company of Illinois ("Progressive"). TAC ¶ 35. Plaintiff's premiums increased in May 2013 and Progressive demanded payment within two weeks. TAC ¶ 12. Plaintiff did not pay within two weeks, but instead "made arrangements to make a payment in July, 2013." TAC ¶ 12. Plaintiff was involved in an accident on July 28, 2013, which resulted in extensive damage to Plaintiff's car and injuries to Plaintiff herself. TAC ¶ 13. After the accident, Plaintiff paid off the outstanding balance with Progressive. TAC ¶ 13. Progressive issued a letter reserving its right not to pay on the July 28, 2013 accident because Plaintiff had not paid her policy until after the accident and had initially given July 29, 2013 as the date of the accident. TAC ¶ 13. In September 2013, Plaintiff purchased excess coverage from Progressive to cover her rental car. TAC ¶¶ 13, 46, 47.

On September 21, 2013, Plaintiff was involved in a single-car accident while driving a rental car. TAC ¶¶ 14, 48. The TAC and its supporting exhibits give divergent and contradictory accounts of the accident, but it generally appears that Plaintiff fell asleep or otherwise lost control of the vehicle and veered off of the road and into an agricultural field. TAC ¶ 14. The police report and Plaintiff's subsequent criminal charges indicate that she crashed into a utility pole, but Plaintiff disputes this. TAC ¶ 50.

A Washington County Sheriff's Deputy named O'Reilly responded to the incident and attempted to question Plaintiff, apparently on suspicion that Plaintiff was driving under the influence. TAC ¶¶ 49, 50, 51. The TAC and Plaintiff's supporting exhibits give contradictory accounts of the interaction between Plaintiff and Deputy O'Reilly, but the encounter ended with Plaintiff being taken into custody and transported to the Washington County jail. TAC ¶¶ 53, 54.

Plaintiff's possessions were searched during the booking-in process and the deputies discovered benzodiazepine, methamphetamine, and marijuana. TAC ¶ 57. Plaintiff declined to submit to urinalysis. TAC ¶ 63. Plaintiff was charged with DUII and Possession of a Controlled Substance. TAC ¶¶ 69, 71. As a non-citizen, Plaintiff was also subject to an immigration detainer issued by Immigration and Customs Enforcement ("ICE") beginning on September 21, 2013. TAC ¶ 79.

On September 24, 2013, Defendant Ryan Corbridge ("Corbridge"), a private criminal defense attorney, was retained to represent Plaintiff. TAC ¶ 82. It appears that Plaintiff's ex-boyfriend paid Corbridge's retainer. TAC ¶ 19; Sehat Decl., at 25, ECF No. 187. Plaintiff remained in custody during the pendency of the charges.

On Corbridge's advice, Plaintiff pleaded guilty to DUII and Possession of a Controlled Substance. TAC ¶ 25. Plaintiff was then transported to an immigration detention facility in Tacoma, Washington. TAC ¶ 26. Plaintiff's immigration problems were ultimately resolved and she was not deported. TAC ¶ 26. Plaintiff was released after 89 days in custody. TAC ¶ 26.

After she returned to Oregon, Plaintiff learned that she was obliged to pay more than $13,000 in restitution as part of her criminal judgment, largely to repair damage caused to the utility pole. TAC ¶ 28. Plaintiff disputed the validity of this sum. TAC ¶ 28. Plaintiff also believed that Progressive should cover the restitution amount, as well as her court-ordered drug

and alcohol treatment. TAC ¶ 29. Plaintiff also alleges that personal property was removed from her car following the September 2013 crash and that Progressive should pay for the return of that property. TAC ¶ 29. It is not clear from the TAC what benefits Progressive has paid on Plaintiff's claims and which claims remain unpaid. *See* TAC ¶¶ 122-24 (indicating that Progressive accepted liability for claims brought by third parties as a result of the September 2013 crash).

## DISCUSSION

### I.     Failure to Comply Court Order

Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "applies to good claims as well as bad, and is a basis for dismissal independent of Rule 12(b)(6)." *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996) (citing *Nevijel v. N. Coast Life Ins. Co.*, 651 F.2d 671, 673 (9th Cir. 1981)). Excessive length or verbosity, standing alone, does not justify dismissal under Rule 8. *Hearns v. San Bernadino Police Dep't*, 530 F.3d 1124, 1131 (9th Cir. 2008). However, a complaint will run afoul of the requirements of Rule 8 if it is confused, conclusory, or "replete with redundancy and largely irrelevant." *Id.* at 1131-32.

This Court has dismissed Plaintiff's two prior complaints in this action and each time the Court has attempted to explain the deficiencies in those complaints in order to permit Plaintiff to remedy them, if possible. ECF Nos. 56, 99, 179, 181. Plaintiff's First Amended Complaint, ECF No. 18, was seventy-four pages long. Plaintiff's Second Amended Complaint ("SAC"), ECF No. 115, was 148 pages long and was accompanied by over 300 pages of exhibits, ECF Nos 116-132. This Court found that the SAC did not comply with the requirements of Rule 8

because it failed to include a "short and plain statement" showing that Plaintiff was entitled to relief. This Court observed that:

> It is critical that Sehat recognize that the deficiencies in her SAC cannot be cured by simply adding more content. Indeed, the primary problems with her SAC are that it contains *too much* irrelevant and redundant material and that it fails to connect the relevant material with her legal claims. Sehat is reminded that her complaint is not the place to include any and all evidence that may support her claims.

Findings and Recommendation, at 4. ECF No. 179.[1]

The Court went on to direct Plaintiff to consult with the Court's Guide for Self-Represented Parties and Complaint Forms in drafting her subsequent complaint.

On July 6, 2016, Plaintiff filed her Third Amended Complaint. ECF No. 184. The TAC is fifty-two pages long and is accompanied by over 700 pages of supporting declarations and exhibits. ECF Nos. 184, 187, 190, 191, 192, 193, 194, 195. As with her previous Complaints, Plaintiff devotes considerable time and attention to irrelevant matters, including lengthy descriptions of nineteenth-century Oregon politics, the formation of Washington County, TAC ¶ 9, Progressive's Internet-based business strategy, TAC ¶ 8, and the manner in which a Washington County jail inmate identified only as Laura was transported to and from the jail showers, TAC ¶ 95. Plaintiff's supporting documents are similarly replete with irrelevant and redundant material, including long digressions on Plaintiff's difficulties with her family, her objections to traditional Middle Eastern cultural norms, and her tumultuous relationship with her significant other. *See, e.g.,* Sehat Decl., at 9-10; 25-27. ECF No. 187. It is clear that Plaintiff has not complied with this Court's order that she submit a short and plain statement consistent with the requirements of Rule 8.

---

[1] The Findings and Recommendation was adopted on May 16, 2016. ECF No. 181.

"Federal Rule of Civil Procedure 41(b) authorizes a district court to dismiss a complaint with prejudice for failure to comply with Rule 8(a)." *Hearns*, 530 F.3d at 1129. Dismissal with prejudice is a "harsh remedy" and should only be imposed when other, less drastic alternatives have been considered. *Nevijel*, 651 F.2d at 674. Alternatives include allowing further amendment, more time, or association with experienced counsel. *Id.* Although there are a "wide variety of sanctions short of dismissal available, the district court need not exhaust them all before dismissing a case." *Id.* The court must also consider whether "public policy strongly favors resolution of this case on the merits." *Hearns*, 530 F.3d at 1132 (internal quotation marks and citation omitted).

In this case, Plaintiff has been given several opportunities to amend her complaint with the benefit of explicit guidance from the Court and each attempt has resulted in increasingly voluminous and confused pleadings. This Court has also endeavored to secure pro bono counsel to assist Plaintiff, but without success. ECF No. 175. Given the age of this case and Plaintiff's numerous opportunities to amend, it is clear that less drastic alternatives would be unavailing. Plaintiff's Third Amended Complaint should be DISMISSED with prejudice for failure to comply with the requirements of Rule 8 and this Court's previous orders.

## II.     Failure to State a Claim

Defendants Ryan Corbridge and Progressive also move to dismiss Plaintiff's claims against them for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient facts that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Factual allegations must be enough to raise the right to relief above the speculative level . . . [and cross the] line between possibility and plausibility of entitlement to relief." *Id.* at

555-57. A claim is plausible on its face when the supporting factual allegations allow the court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

The factual allegations must present more than "the mere possibility of misconduct." *Id.* at 678. In the case of *pro se* litigants, a court reviews the pleadings with a less stringent standard than those drafted by lawyers. The court views the complaint liberally, but will not supplant vague and conclusory allegations. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Litmon v. Harris*, 768 F.3d 1237, 1241 (9th Cir. 2014).

### A. Progressive

Although the TAC contains a confused and conclusory reference to the Sherman Act, Plaintiff's sole claim against Progressive appears to be for breach of contract. To state a claim for breach of contract, a plaintiff must allege (1) the existence of a contract; (2) its relevant terms; (3) plaintiff's full performance and lack of breach; and (4) defendant's breach resulting in harm to plaintiff. *Slover v. Or. Bd. Of Clinical Social Workers*, 144 Or. App. 565, 570 (1996). Under Oregon law, "in an action on an insurance policy the plaintiff must plead facts sufficient to bring the loss within the provisions of the policy . . . . [f]or this purpose it is also essential that the complaint allege facts sufficient to show that the plaintiff sustained or suffered a loss." *Prevosky v. Fireman's Fund Ins. Co.*, 262 Or. 435, 438 (1972).

Although the TAC contains a section entitled "Statement of Claims," that section is largely confused and unintelligible. Plaintiff alleges the existence of an insurance contract between herself and Progressive and that Progressive failed to pay claims as required. Plaintiff does not, however, clearly allege the relevant terms of the contract, nor does she identify what

benefits were due and unpaid. Indeed, the TAC appears to allege that Progressive *did* pay for claims brought by third parties as a result of Plaintiff's September 2013 crash. TAC ¶¶ 122-124.

Nor does Plaintiff clearly allege how Progressive's alleged breach led to many of the injuries claimed by Plaintiff. For instance, Plaintiff claims that Progressive's breach of contract "caused her to endure prolonged incarceration in WCCC's solitary confinement cell," but it is left entirely unclear how Progressive is supposed to have done this. TAC ¶ 115. Plaintiff also asserts that Progressive's refusal to pay for her stolen personal property was "without any basis or justification in Common law," but fails to clearly allege that Progressive was obliged to pay that claim under a particular provision of the contract. TAC ¶ 121. Plaintiff also appears to object to Progressive's decision to accept liability for damage to the utility pole, TAC ¶¶ 126-129, but it is unclear how Plaintiff was, or could have been, harmed by that decision.

Despite characterizing the claim as one for breach of contract, Plaintiff abruptly shifts to accusing Progressive of "price gauging" in violation of the Sherman Act, without any supporting facts. TAC ¶¶ 131-143. The TAC also asserts a conspiracy of some kind between Progressive, the Washington County Sheriff's Office, and Ryan Corbridge, apparently in furtherance of a violation of the Sherman Act. TAC ¶ 142. As Progressive points out, this claim is conclusory, without factual support, and can only be described as gibberish.

Plaintiff has failed to state a claim for breach of contract against Progressive and Progressive's Motion to Dismiss, ECF No. 211, should be GRANTED. As Plaintiff has been afforded numerous opportunities to amend her complaint, dismissal should be with prejudice.

### B. Corbridge

Plaintiff brings claims against Ryan Corbridge for violation of 42 U.S.C. § 1983 and "simulation of legal process."

### 1. 42 U.S.C. § 1983

In order to state a claim for violation of § 1983, a plaintiff must plead facts that give rise to a plausible inference that the defendant deprived her of a Constitutional right while acting under color of state law. *Naffe v. Frey*, 789 F.3d 1030, 1035-36 (9th Cir. 2015). An individual acts under color of state law when he or she "exercises power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Id.* at 1036 (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). Conclusory allegations of a conspiracy between a private party and a state actor are insufficient to sustain a claim under § 1983. *Schucker v. Rockwook*, 846 F.2d 1202, 1205 (9th Cir. 1988).

In this case, the TAC does not allege any facts to support Plaintiff's claim that Corbridge, a privately retained criminal defense attorney, was a state actor. Instead, Plaintiff relies on the conclusory allegation that the Washington County Sheriff's Department used the threat of criminal charges to coerce Plaintiff's ex-boyfriend into hiring Corbridge to represent her. TAC ¶ 19. Plaintiff's allegations are factually deficient, conclusory, and implausible. Plaintiff's § 1983 claim against Corbridge should be dismissed.

### 2. "Simulation of Legal Process"

Plaintiff also brings claims for "simulation of legal process" against Corbridge pursuant to ORS 162.355. ORS 162.355 is a criminal statute prohibiting simulating legal process "with the intent to harass, injure or defraud another person." ORS 162.355(1). From the TAC, it appears that Plaintiff is alleging that Washington County Circuit Court, where she pleaded guilty to DUII and felony Possession of a Controlled Substance, is not a valid Oregon court, but is instead a county court incapable of hearing felony matters and that Corbridge's representation of her before that court constituted a violation of ORS 162.355.

As a preliminary matter, Washington County Circuit Court is a valid Oregon state court, constituting Oregon's 20th Judicial District. ORS 3.012(1)(t). It has subject matter jurisdiction over all actions, unless specifically divested of jurisdiction. Or. Const., Art VII (Original), § 9 ("All judicial power, authority, and jurisdiction not vested by this Constitution, or by laws consistent therewith, exclusively in some other Court shall belong to the Circuit Courts, and they shall have appellate jurisdiction, and supervisory control over the County Courts, and all other inferior Courts, Officers, and tribunals."); Or. Const., Art. VII (Amended), § 2 ("The courts, jurisdiction, and judicial system of Oregon, except so far as expressly changed by this amendment, shall remain as at present constituted until otherwise provided by law."); *Specialty Risk Serv. v. Royal Indem. Co.*, 213 Or. App. 620, 624-25 (2007). The jurisdiction of Oregon's circuit courts extends to felony prosecutions. Or. Const. Art. VII (Amended), § 5 (describing the means by which a person may be charged with a felony in an Oregon circuit court); *State v. Caldwell*, 187 Or. App. 720, 723-24 (2003). Plaintiff's state criminal charges, which were brought in Washington County Circuit Court, and to which Plaintiff pleaded guilty and was sentenced, were real and not "simulated."

Furthermore, ORS 162.355 is a criminal statute. In *Doyle v. City of Medford*, 356 Or. 336 (2014), the Oregon Supreme Court laid out a two-stage process for determining whether an Oregon statutory provision creates a private right of action. *See Great Am. Ins. Co. v. Linderman*, 116 F. Supp.3d 1183, 1189-1191 (D. Or. 2015) (Mosman, J., applying the *Doyle* test and concluding that Oregon's criminal theft statute did not create a private cause of action).

First, the Court must ask "whether the statute expressly or impliedly indicates that the legislature intended to create or to deny such a right of action." *Doyle*, 356 Or. at 363. Next, "[i]f that inquiry discloses no discernable legislative intent to create or deny a right of action, the

court must then decide whether creating a common-law right of action would be consistent with the statute, appropriate for promoting its policy, and needed to ensure its effectiveness." *Id.*

The first step requires the court to examine the statutes "text, context, or legislative history" for an indication that the legislature intended to create a private right of action. *Id.* at 345. ORS 162.355 does not expressly create a cause of action. In determining whether the legislature impliedly created a cause of action, the court must consider "(1) whether the statute refers to civil liability in some way;" and "(2) whether the statute provides no express remedy, civil or otherwise, for its violation and, therefore, there would be no remedy of any sort unless the court determined that the legislature impliedly created one or the court itself provided one." *Doyle*, 356 Or. at 345-46. Although ORS 162.355 forbids the simulation of both civil and criminal processes, it does not refer to civil liability. The statute does provide for a remedy, however, in that it establishes that simulating legal process is a Class C felony. ORS 162.355(3). The text and context of ORS 162.355 do not support the conclusion that the legislature intended to create a private cause of action for simulating legal process.

The next step of the *Doyle* inquiry is to determine whether, in the absence of a legislative intent to create a private cause of action, the court should create a common-law right of action to address the violation. *Doyle*, 356 Or. at 346. The Oregon Supreme Court cautions, however, that the circumstances in which such a creation would be warranted are "limited." *Id.* Courts must consider:

> [T]he nature of the legislative provision at issue, the adequacy of existing claims for relief and associated remedies, the extent to which a common-law right of action will aid, supplement, or interfere with existing claims and remedies and other means of enforcement, the significance of the purpose that the legislative body is seeking to effectuate, the extent of the change in existing common law principles that provision of a right of action would produce, and the burden that the right of action would place on the courts.

*Id.* at 363-64.

In *Linderman*, Judge Mosman explained that the creation of a private cause of action for criminal theft "would do little to supplement the work that criminal sanctions and judgments of restitution do in advancing the legislature's goals in adopting the theft statutes." *Linderman*, 116 F. Supp.3d at 1191. Judge Mosman also noted that the harms caused by theft were already encompassed by existing private causes of action, such as conversion or fraud. *Id.*

That reasoning is readily applicable to the present case. This Court should decline to find that a private cause of action exists for criminal simulation of legal process and dismiss Plaintiff's claims against Corbridge for violation of ORS 162.355. As Judge Mosman observed in *Linderman*, it would be futile to permit amendment of a claim that is not legally cognizable. Accordingly, dismissal should be with prejudice.

## CONCLUSION

Defendant Washington County Sheriff's Office's Motion to Dismiss, ECF No. 201, in which Defendant Progressive and Defendant Corbridge join, should be GRANTED. Defendant Ryan Corbridge's Motion to Dismiss, ECF No. 203, should be GRANTED. Defendant Progressive's Motion to Dismiss, ECF No. 211, should be GRANTED. Plaintiff's Third Amended Complaint, ECF No. 184, should be DISMISSED with prejudice for failure to comply with the requirements of Rule 8 and this Court's previous orders. Defendants Progressive and Corbridge have also demonstrated that they are entitled to dismissal of Plaintiff's claims against them pursuant to Rule 12(b)(6). A judgment should enter dismissing this case accordingly.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no

objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

## NOTICE

A party's failure to timely file objections to any of these findings will be considered a waiver of that party's right to *de novo* consideration of the factual issues addressed herein and will constitute a waiver of the party's right to review of the findings of fact in any order or judgment entered by a district judge. These Findings and Recommendation are not immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment.

DATED this 22nd day of November, 2016.

Hon. Paul Papak
United States Magistrate Judge